UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr- 169-01-JL |
| | ) | |
| AIDEN DAVIDSON (a/k/a "Hamed Aliabadi") | ) | IEEPA Conspiracy (50 |
| | ) | U.S.C. § 1705(c) |
| Defendant | ) | |
| | ) | |
| | ) | |

INDICTMENT

THE GRAND JURY CHARGES THAT:

[50 U.S.C. § 1705 – Conspiracy to Violate International Emergency Economic Powers Act]

Introduction

At all times relevant to this Indictment:

1. Through the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701-1707, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the United States. 50 U.S.C. § 1701 (a). Pursuant to that authority, the President and the executive branch have issued orders and regulations governing and prohibiting certain activities and transactions with Iran by U.S. persons or involving items of U.S. origin or exported from the United States.

2. Pursuant to IEEPA, Title 50, United States Code, Section 1705(a), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter," and pursuant to Section 1705(c), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires

to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall" be guilty of a crime.

3. In 1995 and again in 1997, the President issued a series of three Executive Orders regulating transactions with Iran pursuant to his authorities under IEEPA. *See* Executive Orders 13059 (Aug. 19, 1997), 12959 (May 6, 1995), and 12957 (Mar. 15, 1995). Since 1997, the President has continued the national emergency with respect to Iran and Executive Orders 13059, 12959, and 12957. The most recent continuation of this national emergency was on March 12, 2018. *See* 83 Fed. Reg. 11393 (Mar. 14, 2018).

4. To implement Executive Order 13059, which consolidated and clarified the earlier two Executive Orders, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Iranian Transactions and Sanctions Regulations ("ITSR") (31 C.F.R. Part 560). Absent permission from OFAC in the form of a license, these regulations prohibited, among other things:

    a. The exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology, or services are intended specifically for supply, trans-shipment, or reexportation, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204);

b. The reexportation from a third country, directly or indirectly, by a person other than a United States person, of any goods, technology, or services that have been exported from the United States, if: (a) such reexportation is undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran, and (b) the exportation of such goods, technology, or services, was subject to export license application requirements under any United States regulations (31 C.F.R. § 560.205); and

c. Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in the ITSR (31 C.F.R. § 560.203).

5. In sum, this statute and these regulations collectively make it a crime to export, sell, or supply goods to Iran or the Government of Iran, without U.S. government authorization, or to engage in any transaction to evade or avoid the applicable regulations.

6. Defendant AIDEN DAVIDSON, a/k/a "Hamed Aliabadi," is a citizen of Iran and a naturalized citizen and resident of the United States.

7. Golden Gate International, LLC ("Golden Gate"), is a domestic limited liability company initially registered in November 2013 in the State of New Hampshire. DAVIDSON is the company's manager/member and registered agent. According to its certificate of formation, Golden Gate is involved in the import and export of hydraulic pumps and motors.

8. Unindicted Co-conspirator 1 ("UC-1") is an Iranian company that operates an online resale business based in Tehran, Iran.

9. Unindicted Co-conspirator 2 ("UC-2") is a Turkish freight forwarding company with a location in Igdir, Turkey.

10. At no time relevant to this Indictment did defendant DAVIDSON or Golden Gate apply, obtain, or possess a license or authorization from OFAC to export or supply goods, technology, or services, of any description, from the United States to Iran.

Object of the Conspiracy

11. The object of the conspiracy was to cause the unlicensed exportation and sale of goods from the United States to Iran, including the unlicensed exportation and sale of goods from the United States to persons in third countries undertaken with knowledge and reason to know that the goods were intended specifically for trans-shipment and export to Iran through those third countries, in violation of the ITSR. A further object of the conspiracy was to evade and avoid the ITSR's prohibitions on unlicensed export and sale to Iran by (1) falsely identifying the final destination of the goods so as to mislead Customs officials and others, in violation of the ITSR; and (2) concealing the source of payments for the exported goods.

Manner and Means of the Conspiracy

The manner and means by which the conspiracy was sought to be accomplished included, among other things:

12. DAVIDSON identified and purchased goods in the United States and elsewhere for an Iranian business, UC-1, and reported to UC-1 the specific goods he had purchased and the cost of the items. DAVIDSON also regularly reported his expenses to UC-1, and kept an account of the moneys UC-1 owed him.

13. DAVIDSON arranged with UC-1 and UC-2 to periodically export the goods ostensibly to UC-2 in Igdir, Turkey, using a forwarding agent based in the United States.

14. On the shipping documents that accompanied the exported goods and were filed with customs authorities, DAVIDSON falsely identified the ultimate consignee of the goods as UC-2 in Turkey, even though he knew that UC-2 served as a front company for UC-1 and that the exported goods would bypass UC-2 or be transshipped from UC-2 in Turkey to Iran.

15. DAVIDSON concealed his communications with UC-1 and UC-2 by creating and using multiple email accounts, some of which he used for "regular" business correspondence with other companies (such as the forwarding agent for the exported goods), and others of which he used to communicate covertly with UC-1 and UC-2.

16. Between 2013 and 2017, DAVIDSON and Golden Gate received more than $1 million in international wire transfers, ostensibly from UC-2 and other foreign entities. These wire transfers concealed UC-1's identity as the buyer and recipient of the exported goods, and were used in part by DAVIDSON to purchase additional goods for shipment to Iran.

<u>The Offense</u>

17. Beginning in or about 2013 and continuing through in or about September 2017, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did willfully conspire with UC-1, UC-2, and other persons known and known to the Grand Jury to violate the regulations and prohibitions issued under Title 50, Section 1705 of the United States Code, prohibiting the unlicensed exportation, reexportation, and sale of goods from the United States to Iran, as set forth in 31 C.F.R. §§ 560.203, 560.204, and 560.205.

(All in violation of Title 50, United States Code, Section 1705(a) and (c).)

                        A TRUE BILL

                        /s/ Grand Jury Foreperson
                        Grand Jury Foreperson

SCOTT W. MURRAY
United States Attorney

/s/ John S. Davis
John S. Davis
Assistant United States Attorney

Date: October 17, 2018