UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-169-01/02-JL |
| | ) | |
| AIDEN DAVIDSON (a/k/a "Hamed Aliabadi") (Counts 1-22), | ) | IEEPA Conspiracy |
| | ) | (50 U.S.C. § 1705(c)) |
| | ) | (Count 1) |
| and | ) | |
| | ) | International Money Laundering Conspiracy |
| BABAZADEH TRADING CO. (a/k/a "Babazadeh Hydraulic Trading Group") (Counts 1, 2), | ) | (18 U.S.C. § 1956(h)) |
| | ) | (Count 2) |
| | ) | |
| | ) | Smuggling Goods from the United States |
| Defendants. | ) | (18 U.S.C. § 554) |
| | ) | (Counts 3-11) |
| | ) | |
| | ) | International Money Laundering |
| | ) | (18 U.S.C. § 1956(a)(2)(A)) |
| | ) | (Counts 12-21) |
| | ) | |
| | ) | Unlawful Procurement of Naturalization |
| | ) | (18 U.S.C. § 1425(a)) |
| | ) | (Count 22) |

SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

COUNT 1

[50 U.S.C. § 1705 – Conspiracy to Violate International Emergency Economic Powers Act]

Introduction

At all times relevant to this Indictment:

1. Through the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, the President of the United States was granted authority to deal with unusual and extraordinary threats to the national security, foreign policy, or economy of the

United States. 50 U.S.C. § 1701(a). Pursuant to that authority, the President and the executive branch have issued orders and regulations governing and prohibiting certain activities and transactions with Iran by U.S. persons or involving items of U.S. origin or exported from the United States.

2. Pursuant to IEEPA, Title 50, United States Code, Section 1705(a), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter," and pursuant to Section 1705(c), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) of this section shall" be guilty of a crime.

3. In 1995 and again in 1997, the President issued a series of three Executive Orders regulating transactions with Iran pursuant to his authorities under IEEPA. *See* Executive Orders 13059 (Aug. 19, 1997), 12959 (May 6, 1995), and 12957 (Mar. 15, 1995). Since 1997, the President has continued the national emergency with respect to Iran and Executive Orders 13059, 12959, and 12957. The most recent continuation of this national emergency was on March 12, 2018. *See* 83 Fed. Reg. 11393 (Mar. 14, 2018).

4. To implement Executive Order 13059, which consolidated and clarified the earlier two Executive Orders, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") issued the Iranian Transactions and Sanctions Regulations ("ITSR") (31 C.F.R. Part 560). Absent permission from OFAC in the form of a license, these regulations prohibited, among other things:

    a. The exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods,

technology, or services to Iran or the Government of Iran, including the exportation, reexportation, sale, or supply of any goods, technology, or services to a person in a third country undertaken with knowledge or reason to know that such goods, technology, or services are intended specifically for supply, transshipment, or reexportation, directly or indirectly, to Iran or the Government of Iran (31 C.F.R. § 560.204);

b. The reexportation from a third country, directly or indirectly, by a person other than a United States person, of any goods, technology, or services that have been exported from the United States, if: (a) such reexportation is undertaken with knowledge or reason to know that the reexportation is intended specifically for Iran or the Government of Iran, and (b) the exportation of such goods, technology, or services, was subject to export license application requirements under any United States regulations (31 C.F.R. § 560.205); and

c. Any transaction by any United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions contained in the ITSR (31 C.F.R. § 560.203).

5. In sum, this statute and these regulations collectively make it a crime to export, sell, or supply goods to Iran or the Government of Iran, without U.S. government authorization, or to engage in any transaction to evade or avoid the applicable regulations.

6. In addition, the Department of Commerce (DOC), through the U.S. Census Bureau, required the filing of electronic export information through the Automated Export System (AES) pursuant to Title 13, United States Code, Section 305 and the Foreign Trade Regulations (FTR), Title 15, Code of Federal Regulations, Part 30. The purpose of these

requirements was to strengthen the United States government's ability to prevent the export of certain items to unauthorized destinations and end users because the AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation. With exceptions not relevant to the exports at issue in this Superseding Indictment, electronic export information (EEI) was required to be filed for the export of commodities valued over $2500. EEI was required to contain, among other things, the names and addresses of the parties to the transaction.

7. Defendant AIDEN DAVIDSON, a/k/a "Hamed Aliabadi," is a citizen of Iran and a naturalized citizen and resident of the United States.

8. Golden Gate International, LLC ("Golden Gate"), is a domestic limited liability company initially registered in November 2013 in the State of New Hampshire. DAVIDSON is the company's manager/member and registered agent. According to its certificate of formation, Golden Gate is involved in the import and export of hydraulic pumps and motors.

9. Defendant BABAZADEH TRADING CO., a/k/a "Babazadeh Hydraulic Trading Group," is an Iranian company that operates an online resale business based in Tehran, Iran.

10. Unindicted Co-conspirator 1 ("UC-1") is a Turkish freight forwarding company with a location in Igdir, Turkey.

11. At no time relevant to this Indictment did defendant DAVIDSON or Golden Gate apply, obtain, or possess a license or authorization from OFAC to export or supply goods, technology, or services, of any description, from the United States to Iran.

## Object of the Conspiracy

12. The object of the conspiracy was to cause the unlicensed exporting, reexporting, and sale of goods from the United States to Iran, including the unlicensed exporting, reexporting,

4

and sale of goods from the United States to persons in third countries undertaken with knowledge and reason to know that the goods were intended specifically for trans-shipment and export to Iran through those third countries, in violation of the ITSR. A further object of the conspiracy was to evade and avoid the ITSR's prohibitions on unlicensed export and sale to Iran by (1) falsely identifying the final destination of the goods so as to mislead Customs officials and others, in violation of the ITSR; and (2) concealing the source of payments for the exported goods.

Manner and Means of the Conspiracy

The manner and means by which the conspiracy was sought to be accomplished included, among other things:

13. DAVIDSON identified and purchased goods in the United States and elsewhere for an Iranian business, BABAZADEH TRADING CO., and reported to BABAZADEH TRADING CO. the specific goods he had purchased and the cost of the items. DAVIDSON also regularly reported his expenses to BABAZADEH TRADING CO., and kept an account of the moneys BABAZADEH TRADING CO. owed him.

14. DAVIDSON arranged with BABAZADEH TRADING CO. and UC-1 to periodically export the goods ostensibly to UC-1 in Igdir, Turkey, using a forwarding agent based in the United States.

15. On the shipping documents that accompanied the exported goods and were filed with customs authorities, DAVIDSON falsely identified the ultimate consignee of the goods as UC-1 in Turkey, even though he knew that UC-1 served as a front company for BABAZADEH TRADING CO. and was not the ultimate consignee, and that the exported goods would bypass UC-1 or be transshipped from UC-1 in Turkey to Iran.

16. DAVIDSON concealed his communications with BABAZADEH TRADING CO. and UC-1 by creating and using multiple email accounts, some of which he used for "regular" business correspondence with other companies (such as the forwarding agent for the exported goods), and others of which he used to communicate with BABAZADEH TRADING CO. and UC-1.

17. Between 2013 and 2017, DAVIDSON and Golden Gate received more than $1 million in international wire transfers, ostensibly from UC-1 and other foreign entities. These wire transfers concealed BABAZADEH TRADING CO.'s identity as the buyer and recipient of the exported goods, and were used in part by DAVIDSON to purchase additional goods for shipment to Iran.

## The Offense

18. Beginning in or about 2013 and continuing through in or about September 2017, in the District of New Hampshire and elsewhere, the defendants:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"), and

BABAZADEH TRADING CO. (a/k/a "Babazadeh Hydraulic Trading Group"),

did willfully conspire with each other, with UC-1, who is not named as a defendant in this Superseding Indictment, and with other persons known and unknown to the Grand Jury, to violate the regulations and prohibitions issued under Title 50, Section 1705 of the United States Code, prohibiting the unlicensed exporting, reexporting, and sale of goods from the United States to Iran, as set forth in 31 C.F.R. §§ 560.203, 560.204, and 560.205.

(All in violation of Title 50, United States Code, Section 1705(a) and (c).)

## COUNT 2

[18 U.S.C. § 1956(h) – International Money Laundering Conspiracy]

19. The allegations in paragraphs 1-17 of this Indictment are realleged.

20. Beginning in or about 2013 and continuing through in or about September 2017, in the District of New Hampshire and elsewhere, the defendants:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"), and

BABAZADEH TRADING CO. (a/k/a "Babazadeh Hydraulic Trading Group"),

did conspire with each other and with UC-1, who is not named as a defendant in this Superseding Indictment, and with other persons known and unknown to the Grand Jury, to commit International Money Laundering in violation of Title 18, United States Code, Section 1956(a)(2)(A), namely, to transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, namely, violations of the International Emergency Economic Powers Act, in violation of Title 50, United States Code, Section 1705, and Smuggling Goods in violation of Title 18, United States Code, Section 554.

(All in violation of Title 18, United States Code, Section 1956(h).)

## COUNT 3

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

21. The allegations in paragraphs 1-17 of this Indictment are realleged.

22. Between in or about February 2014 and in or about May 2014, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including hydraulic pumps, electric motors, caterpillar engine, parts of machinery, and pneumatic tools, and designated with Internal Transaction Number ("ITN") X20140310050519, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 4

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

23. The allegations in paragraphs 1-17 of this Indictment are realleged.

24. Between in or about February 2014 and in or about May 2014, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including roller pumps, parts of pumps for liquids, hydraulic engines, motors, and valves, and designated with Internal Transaction Number ("ITN") X20140314055899, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 5

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

25. The allegations in paragraphs 1-17 of this Indictment are realleged.

26. Between in or about August 2014 and in or about September 2014, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including electric motors, parts of machinery, pneumatic engines and motors, and hydraulic pumps, and designated with Internal Transaction Number ("ITN") X20140814767209, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 6

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

27. The allegations in paragraphs 1-17 of this Indictment are realleged.

28. Between in or about August 2014 and in or about December 2014, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including parts of machinery, hydraulic pumps, electric motors, and caterpillar parts, and designated with Internal Transaction Number ("ITN") X20140905939581, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 7

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

29. The allegations in paragraphs 1-17 of this Indictment are realleged.

30. Between in or about September 2014 and in or about December 2014, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including parts of machinery, hydraulic pumps, electric motors, and caterpillar engine, and designated with Internal Transaction Number ("ITN") X20140925998128, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 8

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

31. The allegations in paragraphs 1-17 of this Indictment are realleged.

32. Between in or about April 2015 and in or about June 2015, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including parts of machinery, hydraulic pumps, and caterpillar parts, and designated with Internal Transaction Number ("ITN") X20150430518194, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

COUNT 9

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

33. The allegations in paragraphs 1-17 of this Indictment are realleged.

34. Between in or about April 2015 and in or about June 2015, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including parts of machinery, hydraulic pumps, caterpillar parts, motors, and valves, and designated with Internal Transaction Number ("ITN") X20150507880632, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

COUNT 10

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

35. The allegations in paragraphs 1-17 of this Indictment are realleged.

36. Between in or about November 2016 and in or about February 2017, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including motors, pumps, valves, and other items, and designated with Internal Transaction Number ("ITN") X20161202732830, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as UC-1.

(In violation of Title 18, United States Code, Section 554.)

## COUNT 11

[18 U.S.C. § 554 – Smuggling Goods from the U.S.]

37. The allegations in paragraphs 1-17 of this Indictment are realleged.

38. Between in or about April 2017 and in or about August 2017, in the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly export and send from the United States merchandise, articles, and objects, namely, goods, including displacement pumps, and designated with ITN X20170503712836, contrary to Title 13, United States Code, Section 305, by falsely identifying the Ultimate Consignee of the shipment as Ariyanis Group, Istanbul, Turkey.

(In violation of Title 18, United States Code, Section 554.)

## COUNTS 12 - 21

[18 U.S.C. § 1956(a)(2)(A) – International Money Laundering]

39. The allegations in paragraphs 1-17 of this Indictment are realleged.

40. On or about the dates stated, within the District of New Hampshire and elsewhere, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

with the intent to promote the carrying on of specified unlawful activity, namely, willfully exporting and reexporting goods from the United States contrary to laws and regulations, namely, violations of IEEPA, Title 50, United States Code, Section 1705, and Smuggling Goods in violation of Title 18, United States Code, Section 554, did transport, transmit, and transfer funds to a place in the United States, namely, Bank of America Account no. xxx1127, in the

name of Golden Gate International, LLC, Manchester, NH, from and through a place outside the United States, as set forth below:

| Count | Date | Amount of Funds |
|---|---|---|
| 12 | 2/28/14 | $64,954 |
| 13 | 4/22/14 | $14,000 |
| 14 | 5/7/14 | $19,945.83 |
| 15 | 6/2/14 | $62,974 |
| 16 | 6/24/14 | $64,974 |
| 17 | 9/3/14 | $19,976 |
| 18 | 12/1/14 | $14,976 |
| 19 | 3/2/15 | $29,970 |
| 20 | 3/25/15 | $34,970 |
| 21 | 2/3/17 | $13,910 |

(All in violation of Title 18, United States Code, Section 1956(a)(2)(A) and Title 18, United States Code, Section 2.)

## COUNT 22

[18 U.S.C. § 1425(a) – Unlawful Procurement of Naturalization]

41. The allegations in paragraphs 1-17 of this Indictment are realleged.

42. On or about December 8, 2015, in the District of New Hampshire, the defendant:

AIDEN DAVIDSON (a/k/a "Hamed Aliabadi"),

did knowingly procure and attempt to procure, contrary to law, his own naturalization, by falsely stating under oath in an Application for Naturalization and to a United States Citizenship and Immigration Services Officer that he had never committed, assisted in committing, or attempted

to commit, a crime or offense for which he was not arrested, and that he did not ship goods to Iran, when, in truth and in fact, as DAVIDSON well knew, DAVIDSON had shipped goods to Iran, and had committed the offenses alleged in Counts 1, 2, 3-9 and 12-20 of this Superseding Indictment and had not been arrested for those offenses.

(In violation of Title 18, United States Code, Section 1425(a).)

A TRUE BILL

/s/ Grand Jury Foreperson
Grand Jury Foreperson

SCOTT W. MURRAY
United States Attorney

/s/ John S. Davis
John S. Davis
Assistant United States Attorney

Date: January 9, 2019